UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                         :
MARY ELIZABETH MODICA,                                   :
                                                         :
                              Plaintiff,                 :
                                                         :                    20-CV-4834 (JMF)
               -v-                                       :
                                                         :                    OPINION AND ORDER
NEW YORK CITY DEPARTMENT OF EDUCATION                    :
and CLAUDETTE CHRISTIE,                                  :
                                                         :
                              Defendants.                :
                                                         :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Plaintiff Mary Elizabeth Modica, a former teacher at WATCH High School who

proceeds here without counsel, alleges that Defendants Claudette Christie, the Principal of the

WATCH High School, and the New York City Department of Education ("DOE") wrongfully

discriminated against her on the basis of a disability.  In particular, Modica brings employment

discrimination, hostile work environment, and retaliation claims pursuant to four statutes: the

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111 *et seq.*; the Rehabilitation

Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*; the New York State Human Rights

Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law

("NYCHRL"), N.Y.C Admin. Code § 8-101 *et seq.*  Defendants now move, pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure, to dismiss.  ECF No. 16.  For the reasons stated

below, the motion is granted in part and denied in part.  Specifically, the motion is granted as to

Modica's NYSHRL and NYCHRL claims against the DOE, as well as her hostile work

environment claims against both Defendants pursuant to the ADA, the Rehabilitation Act, and

the NYSHRL; the motion is denied as to her remaining claims.

**BACKGROUND**

The following facts are, unless otherwise noted, taken from the Amended Complaint ("Complaint") and assumed to be true for purposes of this motion.  *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).  Because Modica is proceeding *pro se*, the Court also considers factual allegations made in her opposition papers to the extent that they are consistent with the Complaint.  *See, e.g.*, *Reynolds v. City of Mount Vernon*, No. 14-CV-1481 (JMF), 2015 WL 1514894, at *1 (S.D.N.Y. Apr. 1, 2015).

Modica began teaching English as a Second Language ("ESL") with the DOE in September 2017; in September 2018, she began teaching at WATCH High School.  ECF No. 19 ("Am. Compl."), ¶ 1.  There, she worked "under" Christie, who was Principal of the school.  *Id.* A few months before she began working at WATCH High School, Modica was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") and anxiety; in addition to seeing a psychiatrist monthly, she takes the drug Adderall to treat her conditions.  *Id.* ¶ 2.

Modica received "generally positive evaluations" for observations conducted in October and November 2018.  *Id.* ¶ 4.  But her relationship with the administration changed after December 12, 2018, when Christie issued her a "first disciplinary notice for insubordination and unprofessional conduct" concerning "holiday displays at school."  *Id.* ¶ 5.  After contacting the United Federation of Teachers, her union representative set up a "mediation meeting" with Christie on December 18, 2020.  *Id.* ¶¶ 5-6.  At the meeting, Christie said to Modica, "You're on Adderall, come on Miss Mo.  You don't take directions well, you are very emotional, you perceive things as you want, you take things out of context."  *Id.* ¶ 6.  Following the meeting, Christie gave Modica a "counseling memo" dated January 7, 2019, concerning "professional conduct."  *Id.* ¶ 7.  On or about February 6, 2019, she gave Modica her "first disciplinary letter"

for failing to return a laptop cart key — although Modica had in fact returned it. *Id.* ¶ 9. Additionally, in January and February 2019, Christie denied Modica "professional development opportunities" concerning curriculum development and removed Modica from her position as language access coordinator at the school. *Id.* ¶¶ 8, 10.

On February 13, 2019, Modica met with Christie for her mid-year review meeting. *Id.* ¶ 13. At that meeting, Christie revealed that she had learned from other staff at the school that Modica intended to file a complaint with the DOE's Office of Equal Opportunity ("OEO"). *Id.* Christie complained that Modica was "walk[ing] in here threatening" her and stated that she had "already called [OEO] and let them know about [Modica]." *Id.* The next day, on February 14, 2019, Modica filed a complaint with the OEO, as well as a complaint with the teacher's union about WATCH High School's "ELL [English Language Learner] compliance." *Id.* ¶¶ 11-12.

Following her filing of the OEO, Christie launched a "barrage" of disciplinary actions against Modica. *Id.* ¶¶ 14, 24. Christie initiated an investigation by the Office of Special Investigation against her for allegedly threatening Christie at the February 13, 2019 meeting, and gave her a disciplinary notice about the investigation two days later. *Id.* ¶ 13. In the span of weeks, Modica received four additional disciplinary letters (dated March 4, 2019; March 25, 2019; April 4, 2019; and May 17, 2019) and two additional counseling memos (dated March 6, 2019 and March 25, 2019). *Id.* ¶ 14. Christie also gave Modica all "ineffective" ratings during an observation on March 19, 2019. *Id.* ¶ 15. Modica received another disciplinary notice dated May 16, 2019, which summoned her to another disciplinary meeting. *Id.* ¶ 16. On June 5, 2019, Modica received a "[d]eveloping" rating on the Measures of Teacher Practice evaluation, which stood out in light of her above-average Student Perception Survey results and "[e]ffective"

annual rating based on her students' test scores.  *Id.* ¶ 17.  Modica was then removed from

proctoring the Regents exam, held between June 17 and 19, 2019.  *Id.* ¶ 18.

On June 19, 2019, Christie sent Modica a "notice of discontinuance letter" indicating that

Modica's employment would be terminated; on July 19, 2019, Modica received a "final

discontinuance letter," terminating her employment effective that date.  *Id.* ¶¶ 19-20.  Even after

Modica was terminated, she was summoned for a disciplinary conference with Christie

scheduled for September 11, 2019, although Modica did not attend.  *Id.* ¶ 21.  On October 3,

2019, she was issued another disciplinary letter regarding an incident that allegedly took place on

April 17, 2019.  *Id.* ¶ 22.

Modica filed a charge of discrimination with the Equal Employment Opportunity

Commission ("EEOC") on July 15, 2019.  *Id.* at 6.[1]  She filed a complaint with the New York

State Division of Human Rights ("SDHR") on the same day.  *Id.* at 15-24; ECF No. 23 ("Pl.'s

Opp'n"), at 14.  She received a Notice of Right to Sue from the EEOC on March 8, 2020.  Am.

Compl. ¶ 23.  On May 21, 2020, in accordance with a Standing Order issued by the then-Chief

Judge in connection with the COVID-19 pandemic, *see* Standing Order M10-468, No. 20-MC-

179 (CM) (S.D.N.Y. April 1, 2020), Modica attempted to file a complaint in this Court by

emailing it to a temporary email address set up for that purpose.  *See* Am. Compl. ¶ 25; ECF No.

1-1, at 2.  For reasons that are not clear on the present record, the Clerk's Office did not initially

process Modica's submission.  On June 12, 2020, the Clerk's Office advised Modica by

telephone to refile the complaint, Pl.'s Opp'n 6, and, on the same day, she emailed the temporary

*pro se* filing email address to "resubmit[]" the filing because she had not "heard back from" the

---

[1]     Because the Amended Complaint contains inconsistent pagination, references to page
numbers are to those generated automatically by the Court's Electronic Case Filing system.

Clerk's Office after her initial email, ECF No. 1-1, at 3.  After Modica again contacted the

Clerk's Office on June 16, 2020, she was advised that the Court was unable to open Modica's

electronic submissions, and she submitted her papers in-person to the Clerk's Office on June 17,

2020.  Pl.'s Opp'n 6.  Thereafter, on June 23, 2020, the Clerk's Office marked Modica's initial

complaint as "received" and opened this case.  *See* ECF No. 1, at 1.

## LEGAL STANDARDS

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), a court must accept all facts

set forth in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *See,*

*e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  A

claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient

"to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  A

plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*,

and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.

If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable

to plausible, [the] complaint must be dismissed."  *Id.* at 570.

Even under the heightened pleading standards set by *Iqbal* and *Twombly*, a court is

"obligated to construe a *pro se* complaint liberally."  *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir.

2009).  Thus, when considering *pro se* submissions, such as Modica's, the Court should interpret

them "to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and emphasis omitted).

Nevertheless, "to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *3 (S.D.N.Y. Apr. 28, 2021) (internal quotation marks omitted); *see also, e.g.*, *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) ("[P]ro se complaints must contain sufficient factual allegations to meet the plausibility standard . . . .").

## DISCUSSION

In seeking to dismiss some or all of Modica's claims, Defendants raise both procedural and substantive arguments.  ECF No. 17 ("Defs.' Br."), at 2; *see also* ECF No. 24 ("Defs.' Reply"), at 10.  The Court will address each set of arguments in turn.

## A.  Procedural Arguments for Dismissal

The Court begins by addressing two of Defendants' procedural arguments for partial dismissal: first, that Modica's ADA claims should be dismissed as time barred and, second, that her claims under the NYSHRL and NYCHRL against the DOE should be dismissed for failure to file a notice of claim as required by the New York Education Law.

### 1.  Modica's ADA Claims Cannot Be Dismissed as Time Barred

Defendants' first procedural argument is that Modica's ADA claims should be dismissed as untimely.  Defs.' Br. 6.  It is well established that a claimant must file suit pursuant to the ADA within ninety days of receiving a right-to-sue notice from the EEOC.  *See* 42 U.S.C. § 2000e-5(f)(1).  Modica alleges that she received her right-to-sue notice on March 8, 2020, Am. Compl. 6, and that she filed the present suit by emailing a complaint to the temporary *pro se* filing email address on May 21, 2020, a date falling squarely within the ninety-day window, *id.* ¶ 25.  The Clerk's Office, however, did not docket her initial complaint until June 23, 2020,

approximately two weeks after the ninety-day window had expired; on that basis, Defendants argue that Modica's ADA claims are untimely.  Defs.' Br. 6.

Defendants' argument is easily rejected at this stage of the litigation because Modica may be entitled to invoke the affirmative defense of equitable tolling.  "Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence [she] is unable to obtain vital information bearing on the existence of [her] claim."  *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008) (citation omitted).  "A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that [she] has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way."  *Victorial v. Burge*, 477 F. Supp. 2d 652, 654 (S.D.N.Y. 2007) (internal quotation marks omitted).  Significantly, however, when, as here, a plaintiff raises the defense of equitable tolling in response to a motion to dismiss on statute of limitations grounds, "the motion to dismiss should be denied unless all assertions of the complaint, as read with required liberality, would not permit the plaintiffs to prove that this statute was tolled."  *Stensrud v. Rochester Genesee Reg'l Transp. Auth.*, 507 F. Supp. 3d 444, 453 (W.D.N.Y. 2020) (internal quotation marks omitted); *see also Webster v. Potter*, 746 F. Supp. 2d 635, 638-39 (S.D.N.Y. 2010) (converting a Rule 12(b)(6) motion into a summary judgment motion to evaluate a claim of equitable tolling).

In this case, whether Modica is entitled to equitable tolling turns on factual issues beyond the four corners of the Complaint.  She alleges that she emailed a complaint to a temporary email address set up by the Court for the benefit of *pro se* litigants during COVID-19 on May 21, 2020, a date that was well within the ninety-day limitations period.  *See* ECF No. 1-1, at 2.  For reasons that are not clear on the present record, however, the Clerk's Office did not docket that complaint.  Modica alleges that "she called the [C]ourt on several occasions" before finally

speaking to someone in the Clerk's Office on June 12, 2020, at which point she emailed a copy

of her complaint again.  Pl.'s Opp'n 6; *see* ECF No. 1-1, at 3.  When that did not work, she hand

delivered a copy of her initial complaint five days later.  *See* Pl.'s Opp'n 6; ECF No. 1-1, at 1.  If

these allegations are true, Modica would indeed be entitled to equitable tolling.  *See, e.g.*, *Zerilli-*

*Edelglass v. N.Y.C. Transit Auth*., 333 F.3d 74, 80 (2d Cir. 2003) (noting that equitable tolling is

appropriate "where the plaintiff actively pursued judicial remedies but filed a defective pleading

during the specified time period" (internal quotation marks omitted)), *as amended* (July 29,

2003); *Brown v. George Weston Bakeries, Inc*., No. 3:08-CV-432 (CSH), 2009 WL 497639, at

*2 (D. Conn. Feb. 24, 2009) (applying equitable tolling when the court "delay[ed] . . . filing the

plaintiff's complaint after receiving it").  At a minimum, the Court cannot say as a matter of law

that equitable tolling is unavailable because it turns on factual issues outside the record.

### 2. Modica's State and Local Claims Against the DOE Must Be Dismissed for Failure to File a Notice of Claim Under the New York Education Law

Modica's NYSHRL and NYCHRL claims against the DOE, however, must be dismissed

for failure to file a notice of claim.  Section 3813(1) of the New York Education Law requires a

plaintiff, when bringing a lawsuit against a school, school district, board of education, or school

district officer, to allege that "a written verified claim upon which [the] action . . . is founded was

presented to the governing body of said district or school within three months after the accrual of

such claim."  Although "some courts have held that filing an EEOC or SDHR complaint may

satisfy the notice of claim requirement, the plaintiff must still plausibly allege that the

administrative complaint met § 3813's requirements," including that the EEOC or SDHR

complaint was timely served upon the correct entity.  *Bagarozzi v. N.Y.C. Dep't of Educ.*, No.

18-CV-4893 (RA), 2019 WL 1454316, at *4 (S.D.N.Y. Mar. 31, 2019) (citation omitted); *see*

*also Carter v. Syracuse City Sch. Dist*., 850 F. App'x 22, 25 (2d Cir. 2021) (summary order)

(noting that "the statutory prerequisite" requires presentment of the claim to "the governing

body" and not to "any other individual or body" (cleaned up)).  Here, Modica does allege that

she filed an OEO complaint on February 14, 2019, *see* Am. Compl. ¶ 11, and an EEOC charge of

discrimination and an SDHR complaint in July 2019, *see id.* at 6, 15-23; Pl.'s Opp'n 14.  But she

fails to allege whether the OEO and EEOC filings were timely served on the appropriate

"governing body."  Accordingly, her NYSHRL and NYCHRL claims against the DOE — but

only the DOE — must be and are dismissed.  *See Bagarozzi*, 2019 WL 1454316, at *4; *Legrá v.

Bd. of Educ.*, No. 14-CV-9245 (JGK), 2016 WL 6102369, at *3 (S.D.N.Y. Oct. 19, 2016); *see

also, e.g.*, *Collins v. City of New York*, 156 F. Supp. 3d 448, 460 (S.D.N.Y. 2016) (holding that

Section 3813(1) does not apply to claims against school principals such as Christie).

Nevertheless, in light of Modica's *pro se* status, the Court will grant her leave to amend to cure

these defects if she can do so in good faith.[2]

---

[2]      In light of that conclusion, the Court need not and does not address Defendants' argument
that Modica's NYSHRL and NYCHRL claims against the DOE should be dismissed as time
barred under Section 3813(2-b) of the New York Education Law.  *See* Defs.' Br. 20.  In any
event, after Modica argued that her EEOC charge tolled the Section 3813(2-b) limitations period,
*see* Pl.'s Opp'n 14 — an argument on which courts in this District appear to be split, *compare,
e.g.*, *Langella v. Mahopac Cent. Sch. Dist.*, No. 18-CV-10023 (NSR), 2020 WL 2836760, at *16
(S.D.N.Y. May 31, 2020) ("[T]he filing of an EEOC charge tolls the one-year statute of
limitations for NYSHRL claims against school districts."), *with Ferraro v. Ramapo Cent. Sch.
Dist.*, No. 17-CV-2039 (VB), 2017 WL 6343686, at *3 (S.D.N.Y. Dec. 11, 2017) ("[T]he weight
of the authority suggests that NYSHRL claims brought against school districts and boards
pursuant to Education Law § 3813(2-b) are *not* tolled during [the pendency of an EEOC
complaint].") — Defendants conspicuously failed to renew the argument in their reply.
Accordingly, the argument is deemed abandoned.  *See, e.g.*, *In re Gen. Motors LLC Ignition
Switch Litig.*, 477 F. Supp. 3d 170, 179 n.2 (S.D.N.Y. 2020); *AIG Glob. Sec. Lending Corp. v.
Banc of Am. Sec. LLC*, 646 F. Supp. 2d 385, 411 (S.D.N.Y. 2009), *aff'd*, 386 F. App'x 5 (2d Cir.
2010) (summary order).

**B.  Substantive Arguments for Dismissal**

With that, the Court turns to Defendants' substantive arguments for dismissal of
Modica's claims under the ADA (against both Defendants), the Rehabilitation Act (against both
Defendants), the NYSHRL (against Christie), and the NYCHRL (against Christie) for
employment discrimination, hostile work environment, and retaliation.  The Court will address
each category of claims in turn.

**1.  Discrimination Claims**

Discrimination claims under the ADA, the Rehabilitation Act, the NYSHRL, and the
NYCHRL are — like race discrimination claims under Title VII of the Civil Rights Act —
analyzed using the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411
U.S. 792 (1973).  *See Itzhaki v. Port Auth. of N.Y. & N.J.*, No. 15-CV-7093 (JMF), 2017 WL
213808, at *2 (S.D.N.Y. Jan. 17, 2017) (Rehabilitation Act); *McDonnell v. Schindler Elevator
Corp.*, No. 12-CV-4614 (VEC), 2014 WL 3512772, at *4 (S.D.N.Y. July 16, 2014) (ADA and
NYSHRL), *aff'd*, 618 F. App'x 697 (2d Cir. 2015) (summary order); *see also Dao v.
Oppenheimer Funds, Inc*., 515 F. App'x 31, 32 (2d Cir. 2013) (summary order) ("Discrimination
claims brought under the NYCHRL are also analyzed using the *McDonnell Douglas* framework,
but the NYCHRL is to be construed 'broadly in favor of discrimination plaintiffs, to the extent
that such a construction is reasonably possible.'" (quoting *Melman v. Montefiore Med. Ctr*., 946
N.Y.S.2d 27, 30 (1st Dep't 2012))).  To state a *prima facie* case of disability discrimination, a
plaintiff must allege that (1) her employer is subject to the statutes; (2) she was disabled within
the meaning of the statutes; (3) she was otherwise qualified to perform the essential functions of
her job, with or without reasonable accommodation; and (4) she suffered adverse employment
action because of her disability.  *Sista v. CDC Ixis N. Am., Inc*., 445 F.3d 161, 169 (2d Cir. 2006)

(ADA); *see also Doe v. Bd. of Educ.*, 63 F. App'x 46, 48 (2d Cir. 2003) (summary order) (applying the same to the Rehabilitation Act); *Fernandez v. Windmill Distrib. Co.*, 159 F. Supp. 3d 351, 366 (S.D.N.Y. 2016) (applying the same to the NYSHRL and NYCHRL), *reconsideration denied,* 2016 WL 4399325 (S.D.N.Y. Aug. 17, 2016).  Significantly, the allegations in Modica's Complaint "need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination."  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  Instead, "[t]hey need only give plausible support to a *minimal inference* of discriminatory motivation."  *Id.* (emphasis added).

Defendants do not dispute that Modica satisfies the first three prongs of a *prima facie* case.[3]  Instead, they contend that Modica fails to allege that she suffered any adverse employment action *because of* her disability.  *See* Defs.' Br. 11.  The Court disagrees.  First, Modica does allege that she suffered adverse employment actions, including the deprivation of "curriculum development" opportunities, removal from her position as "language access coordinator," the loss of proctoring duties, and her eventual termination.  Am. Compl. ¶¶ 8, 10, 18-20.  In addition, Modica alleges that she received numerous disciplinary letters, "counseling memos," and negative evaluations.  *See, e.g.*, *id.* ¶¶ 7, 9, 14-17.  It is true, as Defendants argue, *see* Defs.' Br. 11-12, that such communications standing alone do not constitute adverse employment actions, *see, e.g.*, *Fletcher v. ABM Bldg. Value*, 775 F. App'x 8, 14 (2d Cir. 2019) (summary order); *Chung v. City Univ. of N.Y.*, 605 F. App'x 20, 22 (2d Cir. 2015) (summary order).  But when such communications "lead to a materially adverse change in terms and conditions of employment" — as Modica alleges here, in the form of being deprived of certain

---

[3]      Defendants concede for purposes of their motion that ADHD is an actionable disability under each of the relevant statutes.  *See* Defs.' Br. 11 n.3.

opportunities and getting terminated — they may indeed qualify.  *See Simon v. N.Y.C. Bd. of Educ.*, No. 01-CV-6024 (DGT) (LB), 2006 WL 1210959, at *8 (E.D.N.Y. May 2, 2006) ("The disciplinary letters in this case ultimately le[d] to plaintiff's termination, as a result the letters should be viewed as adverse employment actions."), *aff'd,* 240 F. App'x 887 (2d Cir. 2007) (summary order); *see also Batyreva v. N.Y.C. Dep't of Educ.*, No. 07-CV-4544 (PAC) (DF), 2010 WL 11712911, at *17 (S.D.N.Y. Aug. 23, 2010) (citing cases), *report and recommendation adopted*, 2010 WL 11712909 (S.D.N.Y. Sept. 30, 2010), *and adopted,* 2010 WL 3860401 (S.D.N.Y. Oct. 1, 2010), *aff'd,* 464 F. App'x 31 (2d Cir. 2012) (summary order).

Additionally, although a close call, the Court concludes that Modica pleads sufficient facts to support a "minimal inference" that these adverse actions were motived by discriminatory intent.  *See Littlejohn*, 795 F.3d at 311.  Defendants correctly point out that the sole allegations concerning a discriminatory motivation on Christie's part are her disparaging remarks at the December 18, 2018 mediation meeting, including her reference to the fact that Modica was "on Adderall."  Am. Compl. ¶ 6.[4]  "Although evidence of one stray comment by itself is usually not sufficient proof to show . . . discrimination, that stray comment may bear a more ominous significance when considered within the totality of all the evidence."  *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 136 (2d Cir. 2000) (internal quotation marks omitted) (finding that a comment made during a discharge meeting that plaintiff "should 'retire'" supported his *prima facie* case of age discrimination).  In distinguishing between remarks that are probative of

---

[4]      Modica also alleges that Christie has been sued by another employee for pregnancy discrimination and retaliation.  Am. Compl. ¶¶ 1, 20.  Although the Court can take judicial notice of the fact of another lawsuit, it cannot consider the allegations in another lawsuit for their truth. *See, e.g.*, *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (internal quotation marks omitted)).

discriminatory animus and non-probative "stray remarks," courts generally considered four

factors: (1) who made the remark, *i.e.*, a decision-maker, a supervisor, or a low-level co-worker;

(2) when the remark was made in relation to the employment decision at issue; (3) the content of

the remark; and (4) the context in which the remark was made, *i.e.*, whether it was related to the

decision-making process. *Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017); *see*

*also Henry v. Wyeth Pharms., Inc*., 616 F.3d 134, 149-50 (2d Cir. 2010).

In light of these factors, the Court concludes that Christie's remark "give[s] plausible

support to a minimal inference of discriminatory motivation," which is all the Complaint must do

to survive at this stage of the litigation. *Littlejohn*, 795 F.3d at 311. First, although Defendants

assert that Christie lacked decision-making authority over Modica's employment, *see* Defs.'

Reply 7, Modica alleges, and the Court must accept as true, that Christie was in a position to

"recommend[] and orchestrate[]" her termination and had authority to issue her disciplinary

notices and remove her from certain positions within the school. Am. Compl. ¶¶ 8-10, 14, 20.

Second, Christie's comment was made during a mediation meeting regarding disciplinary actions

against Modica and made direct reference to medication commonly known to treat ADHD and

other disorders. *See, e.g.*, *Martinez v. N.Y.C. Transit Auth*., 672 F. App'x 68, 71 (2d Cir. 2016)

(summary order) (noting that the timing of a remark — during a reduction in workforce — and

"direct[]" reference to the employee's tenure were probative of age discrimination); *Mace v.*

*Marcus Whitman Cent. Sch. Dist*., No. 11-CV-6574 (FPG), 2015 WL 5682665, at *9-10

(W.D.N.Y. Sept. 25, 2015) (finding that a superintendent's memorandum noting that "there are a

number of fine young teachers available" was enough to support an inference of discriminatory

intent with respect to the denial of the plaintiff's tenure application), *aff'd*, 677 F. App'x 26 (2d

Cir. 2017) (summary order). And while Defendants are correct to point out that more than six

months passed between the mediation meeting and Modica's eventual termination, *see* Defs.' Br. 13; *see also Sethi v. Narod*, 12 F. Supp. 3d 505, 540 (E.D.N.Y. 2014) ("District courts in this Circuit have found that a three-month lapse between alleged discriminatory statements and an adverse employment action is too long a gap to find the remark probative of discrimination."), Modica alleges that a pattern of adverse action, including the loss of job opportunities, the revocation of certain privileges, and disciplinary actions started only weeks after the incident.  In short, although Christie's alleged comment, without more, might not suffice come summary judgment (or trial), it is enough to get Modica across the plausibility threshold at this stage.[5]

### 2. Hostile Work Environment Claims

By contrast, Modica's hostile work environment claims under the ADA, the Rehabilitation Act, and the NYSHRL fall short.  To state a hostile work environment claim under these three statutes, a plaintiff must plead facts showing that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult[] that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 20 (2d Cir. 2014) (internal quotation marks omitted); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 123-24 (2d Cir. 2013) ("Hostile work environment claims under both Title VII and the NYSHRL are

---

[5]      Claims under the NYCHRL are subject to a more liberal standard, requiring only plausible allegations that the plaintiff "was subjected to unequal treatment because of her protected characteristic."  *Thomson v. Odyssey House*, No. 14-CV-3857 (MKB), 2015 WL 5561209, at *24 (E.D.N.Y. Sept. 21, 2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016) (summary order).  That is, the NYCHRL does not require a "materially adverse employment action."  *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc*., 715 F.3d 102, 114 (2d Cir. 2013).  Given that Modica pleads a plausible claim of discrimination under the ADA, the Rehabilitation Act, and the NYSHRL, it follows that she also states a claim for discrimination under the NYCHRL.  *See, e.g.*, *Lenart v. Coach Inc*., 131 F. Supp. 3d 61, 71 (S.D.N.Y. 2015); *Magnotti v. Crossroads Healthcare Mgmt., LLC*, 126 F. Supp. 3d 301, 314 (E.D.N.Y. 2015).

governed by the same standard."); *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008) (same for ADA); *Lucenti v. Potter*, 432 F. Supp. 2d 347, 360 (S.D.N.Y. 2006) (same for Rehabilitation Act).  "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).  To determine whether a plaintiff adequately states a claim, a court "must consider the totality of the circumstances." *Littlejohn*, 795 F.3d at 321.  To support a hostile work environment claim, the "offensive conduct must . . . be more than episodic"; indeed, it "must be sufficiently continuous and concerted in order to be deemed pervasive." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 75 (2d Cir. 2001) (internal quotation marks omitted).  Additionally, "[i]t is axiomatic that the plaintiff . . . must show that the hostile conduct occurred *because of* a protected characteristic." *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015) (emphasis added).

Measured against these standards, Modica's ADA, Rehabilitation Act, and NYSHRL claims do not clear the plausibility bar.  Modica alleges that she was "ridiculed" on the basis of her disability only once — at the December 18, 2018, mediation meeting — and that, thereafter, she was issued disciplinary notices, removed from certain positions within the school, and received low evaluations.  Am. Compl. ¶¶ 6-10, 14-18.  But this alleged conduct is "not severe or pervasive enough that a reasonable person would have found it hostile or abusive." *Wilson v. JPMorgan Chase Bank, N.A.*, No. 20-CV-4558 (JMF), 2021 WL 918770, at *5 (S.D.N.Y. Mar. 10, 2021); *see, e.g.*, *Harewood v. N.Y.C. Dep't of Educ.*, No. 18-CV-5487 (KPF), 2021 WL 673476, at *13 (S.D.N.Y. Feb. 22, 2021) (finding that negative performance reviews and disciplinary letters are not sufficiently severe or pervasive to give rise to a hostile work

environment claim); *Calise v. N.Y. State Dep't of Motor Vehicles*, No. 17-CV-791 (VB), 2018 WL 4350247, at *7 (S.D.N.Y. Sept. 12, 2018) (dismissing a hostile work environment claim based on "the denial of overtime opportunities and disciplinary decisions allegedly taking on account of [the plaintiff's] race" because they were "discrete, adverse employment decisions"); *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 69 (S.D.N.Y. 2015) (finding that allegedly sexist remarks made on "numerous occasions" were insufficient to support a hostile work environment claim (citing cases)); *Davis-Molinia v. Port Auth. of N.Y. & N.J.*, No. 08-CV-7584 (GBD), 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (finding that "diminished [job] responsibilities," "exclu[sion] from staff meetings," deliberate "avoid[ance]," and "yell[ing] and talk[ing] down to," among other conduct, was not enough to show that the defendants' conduct was sufficiently severe or pervasive), *aff'd*, 488 F. App'x 530 (2d Cir. 2012) (summary order); *see also Torre v. Charter Commc'ns, Inc*., 493 F. Supp. 3d 276, 287-88 (S.D.N.Y. 2020) (concluding that plaintiffs successfully stated claims for employment discrimination but that the conditions alleged were not sufficiently severe to maintain a hostile work environment claim).  Modica's attempt to "turn [her] discrete claims of discrimination and retaliation, string them together and call that a 'hostile work environment'" is unavailing.  *Ben-Levy v. Bloomberg L.P.*, No. 11-CV-1554 (KBF), 2012 WL 2477685, at *12 (S.D.N.Y. June 26, 2012), *aff'd*, 518 F. App'x 17 (2d Cir. 2013) (summary order).

By contrast, the Court concludes that Modica's hostile work environment claim under the NYCHRL cannot be dismissed.  The burden to state a hostile work environment claim under the NYCHRL is less demanding, requiring only an allegation that the plaintiff "was treated less well than other employees because of [her] membership in a protected class."  *Wilson*, 2021 WL 918770, at *4 (internal quotation marks omitted).  Significantly, in contrast to the law governing

NYSHRL and federal claims, severe or pervasive hostility is not required, and "even a single comment may be actionable in the proper context." *Mihalik*, 715 F.3d at 113.  Thus, a hostile work environment claim under the NYCHRL "should only be dismissed if plaintiff alleges nothing more than a petty slight or trivial inconvenience." *Dietrich v. City of New York*, No. 18-CV-7544 (CM), 2020 WL 4226591, at *16 (S.D.N.Y. July 23, 2020) (internal quotation marks omitted).  In light of these standards, Modica's allegation that Christie "ridiculed" her at the December 18, 2018, mediation meeting on the basis of her disability, Am. Compl. ¶ 6, is enough to plead a plausible NYCHRL hostile work environment claim, *see Sanderson v. Leg Apparel LLC*, No. 19-CV-8423 (GHW), 2020 WL 7342742, at *8 (S.D.N.Y. Dec. 14, 2020) (holding that allegations about a supervisor making three comments about plaintiff's perceived sexual orientation to "embarrass" him and "diminish [his] success" were enough to state a NYCHRL hostile work environment claim); *Shukla v. Deloitte Consulting LLP*, No. 19-CV-10578 (AJN) (SDA), 2020 WL 3181785, at *11 (S.D.N.Y. June 15, 2020) (holding that a single comment that the plaintiff was an "expendable Indian" at a time when he was being removed from a project was sufficient to state a claim that he was treated less well as a result of his race or national origin).

### 3.  Retaliation Claims

Finally, the Court concludes that Modica pleads plausible retaliation claims under the ADA, the Rehabilitation Act, the NYSHRL, and the NYCHRL.  To state a *prima facie* claim for retaliation under the first three statutes, Modica must allege that (1) she engaged in an activity protected by the relevant statutes; (2) her employer was aware of this activity; (3) her employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity.  *Treglia v. Town of Manlius*, 313 F.3d 713, 719

17

(2d Cir. 2002).  "The elements of a *prima facie* case of retaliation under the NYCHRL are

identical, except that the plaintiff need not prove any 'adverse' employment action; instead, [she]

must prove that something happened that would be reasonably likely to deter a person from

engaging in protected activity."  *Nieblas-Love v. N.Y.C. Hous. Auth*., 165 F. Supp. 3d 51, 70

(S.D.N.Y. 2016) (internal quotation marks omitted).

      Here, Modica adequately alleges that she engaged in a protected activity — namely, the

filing of her OEO complaint on February 14, 2019 — and that she suffered a "barrage" of

adverse actions in retaliation for that activity.  *See* Am. Compl. ¶¶ 11, 24; *Richard v. N.Y.C.*

*Dep't of Educ*., No. 16-CV-957 (MKB), 2017 WL 1232498, at *17 (E.D.N.Y. Mar. 31, 2017)

("[F]ormal complaints to the OEO . . . constitute protected activity.").  She further alleges that

Christie was aware of her intention to file the complaint the day before she actually filed it; that

Christie explicitly referenced her intention to file it as a perceived "threat[]"; and that she started

suffering a chain of adverse actions — including an investigation, disciplinary letters, counseling

memos, negative evaluations, the loss of proctoring duties, and eventually termination — almost

immediately thereafter.  Am. Compl. ¶¶ 13-20.  Defendants argue that the disciplinary letters and

counseling memos are legally insufficient to constitute adverse actions and that, without those

actions, the passage of more than four months between Modica's protected activity and her loss

of proctoring responsibilities and eventual termination forecloses any inference of retaliatory

intent.  Defs.' Br. 15-17.  But Defendants make no mention of the investigation, of which

Modica was allegedly given notice soon after she filed her OEO complaint.  Am. Compl. ¶ 13.

Moreover, even if (for the reasons discussed above) the letters and memos did not themselves

qualify as adverse employment actions, the "intervening pattern of antagonism between" Modica

and her employers is sufficient to "bridge[]" the temporal gap between Modica's filing of her

OEO complaint in February 2019 and the indisputable adverse employment actions that occurred in June 2019. *Burgos v. City of New York*, No. 18-CV-1150 (JPO), 2019 WL 1299461, at *10 (S.D.N.Y. Mar. 21, 2019) (internal quotation marks omitted). In short, Modica sufficiently pleads retaliation claims under all four statutes.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, Modica's NYSHRL and NYCHRL claims against the DOE are dismissed, as are her hostile work environment claims under the ADA, the Rehabilitation Act, and the NYSHRL against both Defendants. Modica's other claims survive.

The Court grants Modica leave to amend her Complaint to address the defect that led to dismissal of her NYSHRL and NYCHRL claims against the DOE. That is, if Modica has a good faith basis for believing that she complied with Section 3813(1) of the New York Education Law's notice-of-claim requirement, she should include all relevant allegations in a Second Amended Complaint, which will supersede — that is, replace — the current Complaint. Modica shall file any Second Amended Complaint within **thirty days from the date of this Opinion and Order**. Defendants' deadline to answer is hereby EXTENDED until **three weeks after Modica files a Second Amended Complaint or her deadline to do so passes**.

The Court declines to grant Modica leave to amend her remaining dismissed claims. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Ahmed v. GEO USA LLC*, No. 14-CV-7486 (JMF), 2015 WL 1408895, at *5 (S.D.N.Y. Mar. 27, 2015) (internal quotation marks omitted). Here, the Court already granted Modica leave to amend her complaint in response to Defendants' prior motion to dismiss and explicitly

warned that Modica would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 18; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in [her] previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)).  Moreover, Modica does not suggest that she is in possession of facts that would cure the substantive defects with her hostile work environment claims, so any amendment would likely be futile.  *See, e.g.*, *Bright Kids NYC Inc. v. Kelly*, No. 19-CV-1175 (JMF), 2020 WL 6891814, at *6 (S.D.N.Y. Nov. 24, 2020); *Maragh v. Roosevelt Island Operating Corp.*, No. 16-CV-7530 (JMF), 2018 WL 6573452, at *6 (S.D.N.Y. Dec. 13, 2018).

The Clerk of Court is directed to terminate ECF No. 16.  Modica, who is proceeding without counsel, has consented to electronic service of this Opinion and Order.  *See* ECF No. 4.

SO ORDERED.

Dated: August 4, 2021
       New York, New York

_____
JESSE M. FURMAN
United States District Judge